KALIA, Appellee and Cross–Appellant,

v.

KALIA, Appellant and Cross–Appellee.

[Cite as *Kalia v. Kalia,* 151 Ohio App.3d 145, 2002-Ohio-7160.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2001–T–0041.

Decided Dec. 20, 2002.

148

Taft, Stettinius & Hollister, L.L.P., Carl A. Murway and Renee B. Weiss, for appellee and cross-appellant.

Keating, Keating & Kuzman and Daniel G. Keating, for appellant cross-appellee.

Donald R. Ford, Judge.

{¶1} Appellant/cross-appellee, Jatinder Kalia, appeals from the March 13, 2001 judgment entry of the Trumbull County Court of Common Pleas, Domestic Relations Division. Appellee and cross-appellant, Veena Kalia, filed a cross-appeal.[1]

{¶2} On March 24, 2000, appellee filed in the Trumbull County Court of Common Pleas, Domestic Relations Division, a motion to register a foreign support order from a judgment that was entered on May 5, 1995, by the High Court of Delhi, India. In her motion, she claimed that the order was enforceable in Ohio pursuant to the Uniform Interstate Family Support Act ("UIFSA"), which is set forth in R.C. 3115.01. The order of the High Court of Delhi, dated May 5, 1995, stated the following: appellant and appellee were married October 12, 1968. Two daughters were born as issue of the marriage: one in 1970, the other in 1971.[2] In 1972, appellant left India for England to pursue his studies, and in 1973, he moved to Canada. While in Canada, he wrote appellee telling her not to come there, as he was interested in getting their marriage dissolved. Subsequently, he filed for divorce in the Supreme Court of Nova Scotia in Canada on the ground that his marriage with appellee had permanently broken down. Appellee was unable to contest the proceedings, as she had no means to go to Canada.

{¶3} On May 19, 1976, the divorce was finalized, and appellant was ordered to pay appellee 1,000 rupees per month for her maintenance and for the children until appellee remarried. Appellee, through a letter, approached the court in Nova Scotia and with legal aid initiated proceedings against appellant for failure to pay maintenance and support. However, appellant left Canada for the United States, but prior to leaving, he deposited a check for 5,000 rupees with the court. Appellant remarried and had three children with his second wife.

{¶4} Appellee claimed that the ex parte divorce decree obtained by appellant in Canada was illegal and not binding, and in 1984, she sought a divorce in India under the Hindu Marriage Act of 1955. Appellant filed a request to dismiss and argued that appellee had not contested the Canadian decree because she had not raised any objections, and she accepted the maintenance and support. The trial court in India dismissed the action.

---

1. For purposes of this opinion, appellant/cross-appellee will be referred to as appellant, and appellee and cross-appellant will be referred to as appellee.

2. One of the two daughters died in an accident. The date of her death is unclear from the record.

{¶ 5} Yet, in 1986, appellee filed an appeal with the High Court of Delhi, which the court allowed in 1988. On May 5, 1995, the High Court of Delhi disagreed with appellant's arguments and ruled in favor of appellee. The court concluded that the Supreme Court of Nova Scotia was not a court of competent jurisdiction because appellee's silence could not confer jurisdiction on that court. The High Court of Delhi further stated that the ground the divorce was granted on by the Supreme Court of Nova Scotia was not a ground under which a divorce could be granted under the Hindu Marriage Act of 1955. Therefore, the High Court of Delhi ruled that the Nova Scotia judgment had no legal validity in India. The court granted a divorce in appellee's favor.

{¶ 6} In the May 5, 1995 order, the High Court of Delhi also indicated that after "[c]onsidering all of the relevant circumstances like the status of the parties, their financial condition, their means, their way of life, their future necessities, [the court] thought the claim of maintenance by [appellee] for herself and her daughter at the rate of Rs. 10,000/per month [was] fully justified." The court further added that if appellant made a lump sum payment of $33,000 to appellee toward permanent alimony, her claim for an increase in monthly maintenance would be waived. The High Court of Delhi also ordered appellant to pay the sum of $33,000 "by means of a fixed deposit receipt in the name of his daughter" for her to use for her marriage. The amounts were to be paid within two months of May 5, 1995. If not, appellant was ordered to pay "arrears of maintenance at the rate of Rs. 10,000/per month as from 1 November 1986 * * *."

{¶ 7} A hearing was held in Trumbull County on April 20, 2000, but neither party appeared. Hence, in a decision dated April 27, 2000, the magistrate decided that appellee's motion to register a foreign support order was denied for failure to prosecute. The trial court adopted the magistrate's decision on that same date. On May 4, 2000, appellee filed a motion to reinstate the registration of the foreign support order with the trial court. The trial court set the matter for a hearing. In the meantime, on September 29, 2000, appellee filed a motion for leave to amend the registration of the foreign support order. On October 10, 2000, appellant filed a motion to dismiss on the ground that the filing did not meet the requirements of R.C. 3115.39.

{¶ 8} In a decision dated January 18, 2001, the magistrate concluded that "[a]s a matter of due process, the [s]tate of Ohio recognizes that if two people live in a maital [sic] relationship in a jurisdiction, * * * the jurisdiction remains so long as the one party remains a resident there. * * * As a matter of due process, [appellant] was subject to the jurisdiction of the Indian courts. It would not offend American notions of constitutional due process to expect [appellant] to defend his obligation of support to a wife he left in India in an Indian court." Therefore, the magistrate stated that "as a matter of Comity between Nations,

* * * the Orders of the High Court of Delhi are VALID and should be enforced." On February 1, 2001, appellant filed objections to the magistrate's decision. On February 26, 2001, appellee also filed objections to the decision. The trial court overruled both appellant's and appellee's objections and adopted the magistrate's decision on March 13, 2001, from which appellant filed a timely appeal. On April 11, 2001, appellant filed a motion to stay execution, which the trial court denied.

{¶ 9} A hearing took place on April 15, 2001, for the sole purpose of calculating the dollar value of the 1995 judgment of the High Court of Delhi, which was entered in rupees. On April 25, 2001, the magistrate determined that based on the monetary conversion rate, appellant owed appellee, $138,547.23 as of March 2001, minus any payment made since November 1986. On May 8, 2001, appellant objected to the magistrate's decision. The trial court adopted the magistrate's decision on May 9, 2001. Appellee filed objections on May 17, 2001, which were timely pursuant to Civ.R. 53(E)(3). On May 23, 2001, the trial court issued an order stating that the objections were held in abeyance since the matter was before the court of appeals. Consequently, the trial court would await the jurisdictional ruling of this court before proceeding.

{¶ 10} On June 8, 2001, appellant filed a motion to amend his notice of appeal to include the May 9, 2001 judgment entry adopting the magistrate's decision. Appellant timely filed the instant appeal and now advances a single assignment of error:

{¶ 11} "The trial court erred in recognizing the order of the Republic o[f] India on the basis of comity."

{¶ 12} On June 18, 2001, appellee filed a notice of cross-appeal from the May 9, 2001 entry. In her cross-appeal, she presents the following five assignments for our review:

{¶ 13} "[1.] The trial court correctly found that the India order should be registered and enforced, however, the trial court erred when it adopted the decision of the magistrate and found that India was not a 'state' for purposes of UIFSA and held that the India order could not be registered pursuant to UIFSA.

{¶ 14} "[2.] The trial court erred when it overruled appellee's objections to the April 25, 2001 magistrate's decision and adopted the decision of the magistrate because the magistrate did not state with specificity the amount of the arrearage.

{¶ 15} "[3.] The trial court erred when it failed to set forth the appellant's current support obligation and essentially modified the India order.

{¶ 16} "[4.] The trial court erred when it denied [appellee's] motion for attorney's fees.

{¶ 17} "[5.] The trial court erred when it granted appellant's motion to stay execution of judgment, pending appeal and when it denied appellee's motion for relief from the judgment which granted the stay."

{¶ 18} We note that this court issued a judgment entry on May 9, 2002, remanding the matter to the trial court because there was no final appealable order. The entry directed the trial court "to bifurcate the amount it determines under comity is owed for spousal support and the amount for child support. The trial court should note any determination must not be repugnant to the laws of the state of Ohio." The trial court issued a judgment entry on July 26, 2002; accordingly, we will treat this as a premature appeal. In that entry, the trial court stated:

{¶ 19} "* * * the Order of the High Court of Delhi of Ten Thousand [rupees] per month converted to spousal support as of May 5, 1995[.]

{¶ 20} "[Appellant] is to be given credit for payments made from 1986 to 1993 in the amount of Three–Thousand Four–Hundred Fifty–One Dollars ($3,451.00).

{¶ 21} "The Court finds that [appellant] owes temporary maintenance from November 1, 1986, to May 5, 1995, the sum of Seventy–Five–Thousand Nine–Hundred Fifty–Seven Dollars and Seventeen Cents ($75,957.17) less the credit for payments made of Three–Thousand Four–Hundred Fifty–One Dollars ($3,451.00) for a total of Seventy–Two–Thousand Five–Hundred Six Dollars and Seventeen Cents ($72,506.17). Further that [appellant] owes as and for permanent spousal support from May 1995 to April 2001 the sum of Sixty–Two–Thousand Five–Hundred Ninety Dollars and Six Cents ($62,590.06). Said permanent spousal support to continue at the amount and increases set by the High Court of Delhi until such time as that Court changes the Order."

{¶ 22} We will first address appellant's sole assignment of error. Under this assignment, appellant raises five issues for our review: (1) a foreign judgment cannot be recognized and enforced in Ohio on the basis of comity when is it repugnant to the laws of the United States and Ohio; (2) the foreign judgment violates the doctrine of res judicata and is not entitled to recognition in Ohio on the basis of comity; (3) the foreign judgment violates the fundamental right of equal protection and should not be enforced on the basis of comity; (4) the foreign judgment violates Ohio public policy and should not be recognized and enforced on the basis of comity; and (5) the foreign judgment is contrary and repugnant to the laws of Ohio regarding the defense of laches, and thus, it should not be recognized and enforced on the basis of comity.

{¶ 23} It is well-settled that "[u]nlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo." *Nationwide*

*Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶ 24} We note that all five of appellant's arguments raise the issue of comity. Comity refers to an Ohio court's recognition of a foreign decree and is a matter of courtesy rather than of right. *State ex rel. Lee v. Trumbull Cty. Probate Court* (1998), 83 Ohio St.3d 369, 374, 700 N.E.2d 4; *Walsh v. Walsh* (2001), 146 Ohio App.3d 48, 56, 764 N.E.2d 1103. Furthermore, "several states of the United States are empowered, if they freely elect to do so, to recognize the validity of certain judicial decrees of foreign governments where they are found by the state of the forum to be valid under the law of the foreign state, and where such recognition is harmonious with the public policy of the forum state, taking into consideration all of the relevant facts of the particular case." *Yoder v. Yoder* (1970), 24 Ohio App.2d 71, 72, 53 O.O.2d 193, 263 N.E.2d 913.

{¶ 25} Ohio has codified the UIFSA at R.C. 3115.01 et seq. Under this statute, one who resides out of state and seeks child support from a party residing in Ohio may either (1) file a complaint seeking child support with an initiating tribunal in one's local jurisdiction, R.C. 3115.12, and then have the documents forwarded to a responding tribunal in Ohio for a determination and judgment, R.C. 3115.01 through 3115.31, or (2) register for enforcement in Ohio a child support order that was entered in a foreign jurisdiction with the appropriate tribunal, R.C. 3115.39 through 3115.59.

{¶ 26} For appellant's first issue under his lone assignment of error, he argues that the May 5, 1995 judgment is adverse to the laws of the United States and Ohio and cannot be recognized and enforced on the basis of comity. Here, appellant left India and attempted to obtain a divorce in Nova Scotia. The Indian Court held that the Canadian divorce had no legal validity in India. The issue before this court deals with support.

{¶ 27} In *Tahan v. Hodgson* (C.A.D.C.1981), 662 F.2d 862, 864, quoting *Hilton v. Guyot* (1895), 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95, the court found:

{¶ 28} " '[T]he merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or on appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact' if there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was

sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect."

{¶ 29}   Hence, the requirement for enforcing a foreign judgment pursuant to *Tahan* is that "the original claim not violate American public policy" or "be 'repugnant to fundamental notions of what is decent and just in the State where enforcement is sought.' "   Id.

{¶ 30}   In the instant matter, the High Court of Delhi ordered appellant to pay support and maintenance to his former wife and daughters dated back to November 1, 1986.   It is our view that enforcing an obligation of a father to support his former wife and children is not repugnant or contrary to the laws of the United States and Ohio. Furthermore, appellant had an opportunity to defend in India.   In fact, he did, and he was successful at the trial court level. Therefore, it is our view that the trial court's decision was in accordance with the standards set forth in *Yoder* and *Tahan*.

{¶ 31}   As to appellant's assertion that the High Court of Delhi's decision was based on the Hindu Marriage Act of 1955 and that this violates the First Amendment to the United States Constitution, which mandates that there be no governmental establishment of religion, it is our position that the issue presently before this court deals with support and not with whether the laws in another country are in harmony with the Constitution of the United States. We fail to see how our enforcement of any such order would promote religion or foster excessive entanglement with religion, since the essence of the trial court's decision was to provide for past due support and maintenance of appellee and the children, which clearly does not violate the First Amendment.

■■   {¶ 32}   For his second argument, appellant claims that the order from the High Court of Delhi violated the doctrine of res judicata and thus is not entitled to be recognized in Ohio. In *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus, the Supreme Court of Ohio stated that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."   Res judicata precludes relitigation of the same issue when there is mutuality of the parties and when a final decision has been rendered on the merits.   Id. at 382, 653 N.E.2d 226.

■■   {¶ 33}   Furthermore, the doctrine of res judicata includes both claim preclusion and issue preclusion.   *Swift v. Swift* (Sept. 1, 2000), 11th Dist. No. 99–T–0165, 2000 WL 1239908, at * 3. "Pursuant to the latter legal concept, which is often called collateral estoppel, a party will be barred from raising an issue in a new action when that issue was fully considered by a court of competent jurisdiction in a previous action."   Id., citing *Ft. Frye Teachers Assn., OEA/NEA*

*v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140. To apply collateral estoppel, the party asserting it must show that the parties in the prior action were identical to, or at least in privity with, the parties in the new action and that the issue in question was actually litigated and necessarily decided in the earlier action. Id.

{¶ 34} In the case sub judice, it is undisputed that appellant and appellee were the only two parties to the relevant actions in Canada and India. In the High Court of Delhi, appellant raised the argument as to whether the Nova Scotia Court should control. Both the High Court of Delhi and the trial court here determined that the Nova Scotia Court was not a court of competent jurisdiction. Hence, res judicata was not applicable. We conclude that the trial court did not err in rejecting appellant's res judicata argument.

{¶ 35} Appellant's third and fourth issues under his assignment of error are interrelated. Thus, they will be addressed in a consolidated fashion. For his third argument, appellant contends that the foreign judgment violated the right of equal protection. Appellant claims that the support obligation imposed by the High Court of Delhi requires a parent to provide support to an adult child based on the sex of the child. In his fourth issue, appellant alleges that the foreign judgment violates public policy.

{¶ 36} Here, appellant has not demonstrated that there is any law in India that would require financial support for a female child for a longer period of time than for a male child. Therefore, we conclude that his equal protection argument should fail. In *Litvaitis v. Litvaitis* (1972), 162 Conn. 540, 544–545, 295 A.2d 519, the Connecticut Supreme Court held:

{¶ 37} "[J]udgments of courts of foreign countries are recognized in the United States because of the comity due to the courts and judgments of one nation from another. Such recognition is granted to foreign judgments with due regard to international duty and convenience, on the one hand, and to rights of citizens of the United States and others under the protection of its laws, on the other hand. This principle is frequently applied in divorce cases; a decree of divorce granted in one country by a court having jurisdiction to do so will be given full force and effect in another country by comity, not only as a decree determining status, but also with respect to an award of alimony and child support. The principle of comity, however, has several important exceptions and qualifications. A decree of divorce will not be recognized by comity where it was obtained by a procedure which denies due process of law in the real sense of the term, or was obtained by fraud, or where the divorce offends the public policy of the state in which recognition is sought, or where the foreign court lacked jurisdiction."

{¶ 38}　Moreover, in *Shikoh v. Murff* (C.A.2, 1958), 257 F.2d 306, the appellant, a native of a part of India, which is now Pakistan, came to the United States as a student. He was married and had three children. In 1955, the appellant appeared in New York before a reverend, who was the spiritual head and national director of the Islamic Mission of America. He declared that he wanted to be divorced from his wife. The reverend granted him a divorce in accordance with the laws of Islam and in conformity with the laws of the United States government. The appellant's divorce was held invalid. The appeal was taken to the United States Court of Appeals Second Circuit to review the rulings of the Immigration and Naturalization Service. The court of appeals stated that the divorce could be valid only when granted in Pakistan because "[w]hile a divorce decree rendered in a foreign jurisdiction between persons domiciled therein is recognized in the United States because of the requirements of international comity * * *." Id. at 309.

{¶ 39}　The court further explained that " '[d]ifferent communities have different views and laws respecting matrimonial obligations, and a different estimate of the causes which should justify divorce. It is both just and reasonable, therefore, that the differences of married people should be adjusted in accordance with the laws of the community to which they belong, and dealt with by the tribunals which alone can administer those laws.' " Id., quoting Lord Penzance in *Wilson v. Wilson*, L.R. 2 P. & D. 442.

{¶ 40}　We also note that many states agree with the foregoing principle. See *Hansen–Boyer v. Boyer* (May 17, 2001), 2001 WL 649460, at * 1–2; *Brown v. Perry* (1931), 104 Vt. 66, 72, 156 A. 910; *Azim v. Saidazimova* (2001), 280 A.D.2d 566, 720 N.Y.S.2d 561, 562; *Atassi v. Atassi* (1995), 117 N.C.App. 506, 510, 451 S.E.2d 371.

{¶ 41}　In the case at bar, we note that there was a divorce decree issued from another country, which we recognize based on the principles of comity. Appellant claims that the foreign decree violates public policy because it required him to support his daughter beyond the age of eighteen. Yet, the order issued by the High Court of Delhi indicated that appellant was to pay $66,000 within two months of May 5, 1995, or else he would be in arrears at a rate of 10,000 rupees per month from November 1, 1986. In 1986, both of appellant's daughters were still minors. Moreover, the trial court here explained in its July 26, 2002 entry that the order from the High Court of Delhi of 10,000 rupees per month converted to spousal support as of May 5, 1995. The court stated that appellant owed temporary maintenance (child support) from November 1, 1986 to May 5, 1995, in the amount of $72,506.17, and permanent spousal support from May 1995 to April 2001, in the sum of $62,590.06. Accordingly, it was not unreasonable to expect him to support his children, and it is our position that

there was no public policy violation. Hence, we conclude that the trial court did not err in enforcing the decree issued by the High Court of Delhi.

{¶ 42} In his final issue under his sole assignment, appellant argues that the foreign judgment should not be recognized and enforced because it was contrary to the laws of Ohio regarding the doctrine of laches.

{¶ 43} The doctrine of laches is an omission by a party to assert a right for an unreasonable and unexplained length of time under circumstances which are prejudicial to the opposing party. *State ex rel. Eaton Corp. v. Indus. Comm.* (1997), 80 Ohio St.3d 352, 356, 686 N.E.2d 507. The elements of laches are (1) an unreasonable delay or lapse of time in asserting a right, (2) no excuse for the delay, (3) actual or constructive knowledge of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Mallory v. Pub. Emp. Retirement Bd.* (1998), 82 Ohio St.3d 235, 244, 694 N.E.2d 1356; *Butera v. Willoughby Hills* (Mar. 30, 2001), 11th Dist. No. 2000–L–048, 2001 WL 314726, at * 2. Prejudice is not inferred from a mere lapse of time, and " 'in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.' " *Stevens v. Natl. City Bank* (1989), 45 Ohio St.3d 276, 285, 544 N.E.2d 612, quoting *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus.

{¶ 44} Here, appellant claims that he was materially prejudiced because he relied on the Nova Scotia order. However, he made this argument to the High Court of Delhi, and that court held that the Canadian divorce had no legal validity in India. The trial court also agreed with this determination and explained that appellant and appellee were married in India, conceived children in India, and the children were born and lived in India their entire lives.

{¶ 45} The record in the present matter reveals that appellee was unable to travel to Canada after appellant filed for a divorce. The Canadian court granted a divorce and imposed support obligations on appellant in 1976. Appellant failed to meet his support obligations, so appellee hired legal aid in Canada. The Canadian court issued a warrant for appellant's arrest for his failure to make the payments. Appellant then deposited 5,000 rupees with legal aid in Canada. Appellee proceeded to file a petition for divorce with the High Court of India in 1984. Therefore, based on the facts in this case, we cannot discern how appellant suffered any material prejudice by appellee's filing for divorce in India in 1984. We conclude that the trial court did not abuse its discretion in recognizing the decree from the High Court of Delhi. Accordingly, appellant's first assignment of error is not well founded.

{¶ 46} Turning to appellee's cross-appeal, for her first assignment of error, appellee maintains that the trial court erred when it found that India was not a "state" for purposes of the UIFSA, and, thus, the order could not be registered pursuant to the UIFSA.[3] R.C. 3115.01(U)(2) states that a " 'State' * * * includes * * * [a] foreign jurisdiction that has enacted a law or established procedures for *issuance and enforcement of support orders* that are substantially similar to the procedures under sections 3115.01 to 3115.59 of the Revised Code, the uniform reciprocal enforcement of support act, or the revised uniform reciprocal enforcement of support act." (Emphasis added.)

{¶ 47} After a review of the Indian statute cited by appellee, we note that Section 13 of the Indian Code of Civil Procedure does not make mention of the issuance and enforcement of support orders; that section simply references courts in India recognizing judgments rendered by courts in other countries. Consequently, it is this court's view that the trial court did not err in concluding that India is not a "state" within the meaning of R.C. 3115.01(U)(2). Appellee's first assignment of error on her cross-appeal is overruled.

{¶ 48} For the second assignment of error raised in appellee's cross-appeal, she argues that the trial court erred when it overruled her objections to the April 25, 2001 magistrate's decision and adopted the decision, as the magistrate did not state with specificity the amount of the arrearage. This argument is flawed because the record reveals that the trial court did not overrule appellee's objections, which were filed on May 17, 2001. Rather, in an entry dated May 23, 2001, the trial court held the objections in abeyance pending this appeal. Since the trial court did not address appellee's objections, there is nothing for us to review. We consider this argument prematurely raised. Appellee's second assignment of error has no merit.

{¶ 49} Under her third assignment of error on cross-appeal, appellee posits that the trial court erred when it failed to set forth appellant's current support obligation and modified the order issued by the High Court of Delhi. Appellee further argues that the trial court modified the original order and terminated the support order by failing to state the current support obligation. Again, the issue before the trial court was not to set forth a support obligation: it was to enforce an obligation that was already rendered by the High Court of Delhi. The High Court of Delhi held that appellant was in arrears in the amount of 10,000 rupees per month. In its July 26, 2002 entry, the trial court did not modify the 10,000 rupees-per-month award; nor did it modify the amount of child support or

---

3. Apparently, appellee's argument appears to be an alternative basis to seek enforcement of the High Court of Delhi's order in the event we would conclude that comity should not be applied to the order.

spousal support. However, pursuant to our remand, it did achieve separate orders of child support and spousal support that did not alter the High Court of Delhi's 10,000 rupees-per-month award. Hence, we fail to see how the trial court modified the total monthly amount of support issued by the High Court of Delhi. We also do not understand where in the trial court's decision it terminated the support order. Consequently, appellee's third assignment of error is without merit.

{¶ 50} In the fourth assignment of error on cross-appeal, appellee claims that the trial court erred when it denied her motion for attorney fees. "The general rule is that the decision whether to award attorney fees is a matter within the sound discretion of the trial court. In the absence of a clear abuse of discretion, a reviewing court will not reverse the judgment of the trial court." *Frederick v. Frederick* (Mar. 31, 2000), 11th Dist. No. 98–P–0071, 2000 WL 522170, at * 25, citing *Birath v. Birath* (1988), 53 Ohio App.3d 31, 39, 558 N.E.2d 63.

{¶ 51} In the matter at hand, appellee claims that the award of attorney fees is supported by R.C. 3115.24. However, as we stated above, the trial court determined that India was not a "state" within the meaning of R.C. 3115.01(U)(2), and, thus, enforced the foreign order on the basis of comity. Further, since the High Court of Delhi's order did not include any award of attorney fees, there was no basis for the trial court to make such an award on the basis of comity. Hence, the statutes in Ohio enacted as part of the UIFSA have no enforcement in this case. Appellee's fourth assignment lacks merit.

{¶ 52} For appellee's final assignment of error under her cross-appeal, she asserts that the trial court erred when it granted appellant's motion to stay execution of the judgment and denied her motion for relief from the judgment which granted the stay.

{¶ 53} After reviewing the record on appeal, we were able to find only a motion to stay filed by appellant on April 11, 2001, which was denied by the trial court. We were unable to locate the pleadings appellee mentions in her argument because they are not contained in the record. Therefore, appellee's fifth assignment of error on her cross-appeal is meritless.

{¶ 54} For the foregoing reasons, appellant's lone assignment of error and appellee's assignments of error on her cross-appeal are not well taken. The judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

WILLIAM M. O'NEILL, P.J., and DIANE V. GRENDELL, J., concur.